1815.

CROTON
TURNPIKE
COMPANY
v.
RYDER.

Nov. 21st.

THE PRESIDENT, DIRECTORS, AND COMPANY OF THE CROTON TURNPIKE ROAD *against* RYDER AND OTHERS.

An injunction will be granted to secure to a party the enjoyment of a privilege, conferred by statute, of which he is in the actual possession, and when his legal title is not put in doubt.

As where a turnpike company, incorporated with the exclusive privilege of erecting toll-gates, and receiving toll, had duly opened and established the road, with gates, &c.; and certain persons with a view to avoid the payment of toll, opened a by-road, near the turnpike, and kept it open, at their own expense, for the use of the public, by which travellers were enabled to avoid passing through the gate and paying toll to the plaintiffs; the court granted a perpetual injunction to prevent the defendants from using, or allowing others to use, such road, and ordered the same to be shut up.

THE bill, in this case, charged, that the plaintiffs were incorporated by the act of the 6th of *April*, 1807, for the purpose of making a turnpike road from the house of *Thomas B. Sears*, in the town of *South East*, to the meeting house in *Stephentown*, under the regulations of the general act relative to turnpike companies, passed the 13th of *March*, 1807; and that, by a supplementary act, passed the 18th of *March*, 1808, in favour of the plaintiffs, they were authorized to extend the road so as to intersect the *Highland Turnpike* at *Mount Pleasant*; that the road was laid out, completed, inspected, and the toll-gates erected according to the act; and that the road, so made, was established by the act of *April* 8th, 1811; that the defendants and others combined to injure the plaintiffs in the enjoyment of their road, and the privileges of it; that all the defendants, except *F. Graham*, purchased, in fee, in 1812, of *W. Haight*, a strip of land three rods wide, containing one and a half acres, for 250 dollars, which sum was raised by contribution among them; and this land was purchased to be used as a road, and to avoid the toll-gate on the road of the plaintiffs; that the defendants caused the strip of

1815.

CROTON
TURNPIKE
COMPANY
v.
RYDER.

land, so purchased by them, to be laid out, by the commis-sioners of highways, in *June*, 1812, as a public highway, and the order of the said commissioners was recorded the 17th of *November*, 1812 ; that the by-road, marked 1, 2, 3, on a *map* (*a*) of the road of the plaintiffs, annexed to their bill, is unnecessary, the turnpike affording a way as good and as easy, and being only five chains and one link longer ; that the whole object of the defendants in laying out their road, marked 1, 2, 3, on the map, was to avoid the toll-gate ; that, on appeal to the court of common pleas, on the 21st of *November*, 1812, the judges of that court reversed the order of the commissioners for laying out the road ; that the plain-tiffs soon after caused the by-road to be obstructed, and defendants again opened it ; and by that means much tra-velling is diverted from the gate on the road of the plain-tiffs, by which they have lost, in tolls, 1,000 dollars ; and that the defendants persist in refusing to discontinue the by-road, so marked 1, 2, 3.    The plaintiffs prayed

(*a*) The following diagram, taken from part of the map, will be sufficient for understanding the facts in the case, and the decision of the court :

that the defendants might account, and pay to them the amount of the tolls so lost ; and might be decreed to discontinue their said by-road, or that part thereof marked 1, 2, 3, on the map, and to close up the same, so as to prevent all persons travelling on the turnpike from using it ; and that the defendants may be perpetually enjoined not to open or use, or permit to be opened or used, as a road, for public use or travelling, the said by-road, so marked 1, 2, 3, &c.

The defendants put in a joint and several answer, admitting that the plaintiffs were incorporated under the acts mentioned, and that the turnpike road was laid out by the commissioners, duly appointed under those acts, who reported the road well made according to the acts, and that the governor authorized the erection of the toll-gates, &c. ; but the defendants denied that the road was made as the act prescribed. They admitted the facts charged in the bill, as to the purchase of the piece of land, marked on the map 1, 2, 3, but denied that the purchase was made with any fraudulent intent, or with a view to injure the plaintiffs, or to enable themselves, or others, to avoid paying toll ; but that they purchased it for their benefit, and because it would be an advantage to the country to have it laid out as a *road*, it being more convenient for going to the new landing of *Sparta*. They admitted that the new road, so laid out by them, might, and did, enable persons to avoid passing through the turnpike gate, and paying toll to the plaintiffs ; and that the new road marked 1, 2, 3, was only four chains and one link shorter than the road through the toll-gate ; but they denied that the road was so laid out by them for the purpose and intent charged in the bill. They admitted that the commissioners of highways had declared the road a public highway, and that their order was recorded the 17th of *November*, 1812 ; and that the order was reversed, on appeal, by the court of common pleas, because maintaining the road would be a great public burden ; that the road had been since kept open for public use and travel, though

not at the public expense, but that it was so kept open only, as that travellers were not hindered from using it ; and they denied that they, or other persons, had used the road for the purpose of avoiding the toll-gate.    They admit that the plaintiffs obstructed the by-road, and that one of the defendants (*B. Ryder*) removed the obstruction ; that the road was, afterwards, repaired by them, and for their use, and kept open for the use of the public, as they did not conceive themselves authorized to obstruct it, &c.

*Munro,* for the plaintiffs.

*T. A. Emmet* and *Sampson,* for the defendants.    They cited 1 *Vesey,* 477.    2 *Vesey,* 414.    2 *Atk.* 391.

THE CHANCELLOR.    The plaintiffs have shown a clear and undisputed right, by statute, to the taking of toll at the gates, and for the use of the turnpike road mentioned in the pleadings.    They were, likewise, at the commencement of the suit, in the actual possession and exercise of that exclusive right ; and the question is, whether the establishment of the open and common road, designated on the map by the figures 1, 2, 3, be not a disturbance of that right, amounting to a private nuisance.

There can be no question as to the right of the plaintiffs. It was given to them by the acts of the legislature of the 13th of *March,* 1807, and 18th of *March,* 1808 ; and it is shown and admitted, that they conformed to the conditions upon which the grant was made.    The road was duly laid out, and report duly made by commissioners appointed according to law, and the gates were then erected in pursuance of the governor's license.    The road, as worked and constructed, was also established by the act of the 8th of *April,* 1811.    The defendants admit that they combined together to purchase jointly of *William Haight,* the strip of land on which the road marked 1, 2, 3, complained of, was establish-

ed and opened. They admit the consideration of 250 dollars was raised by contribution, and a deed in fee taken to all of them, except *Frederick Graham*, on the 10th of *December*, 1811. They admit that they purchased the land to be laid out as a road for their benefit, and because it would be a public advantage. They admit that this new road has not been established as a public road; and that the distance by that road from *A.* to *D.*, on the map, is only 4 chains and 1 link shorter than the distance between the same points by the way of the toll-gate. They admit that the new road has been kept open for public use and travel, and maintained as such by private expense, by not impeding travellers from using it ; and they admit that this road may, and does, enable persons to avoid passing through the gate and paying toll to the plaintiffs. After these admissions, it is in vain for the defendants to allege that the road was established without any views injurious to the rights of the plaintiffs. The facts speak for themselves ; and I think it is impossible for any person to cast his eye upon the map, which is made an exhibit in the cause, without being struck, at once, with the conviction, that the injury is direct, palpable, and inevitable, and that, if no such turnpike gate existed, no such new road would have been purchased, made, and kept open.

It is, then, a plain case of a material and mischievous disturbance of the plaintiffs in the enjoyment of the statute privilege, which was granted to them by the legislature for public purposes, and founded on a valuable consideration.

The only question is as to the remedy, and this appears to me to be equally certain.

It is settled that an injunction is the proper remedy to secure to a party the enjoyment of a statute privilege, of which he is in the actual possession, and when his legal title is not put in doubt. The *English* books are full of cases arising under this head of equity jurisdiction. (*Bush* v. *Western*, *Prec. in Chan.* 530. *Whitchurch* v. *Hide*, 2

*Atk.* 391.) But I need not enter into this discussion, for the point has been recently settled in this state, in the case of *Livingston and Fulton* v. *Van Ingen and others,* (9 *Johns. Rep.* 507.,) and I shall rest upon the authority of that case, and upon the application of the principles on which it was decided.

The equity jurisdiction in such a case is extremely benign and salutary. Without it, the party would be exposed to constant and ruinous litigation, as well as to have his right excessively impaired by frauds and evasion.

If such a contrivance as this case presents, is to be tolerated, all our statute privileges of the like kind, on which millions have been expended, would be rendered of little value, and the moneys have been laid out in vain.

I shall, accordingly, decree, that the defendants be perpetually enjoined from opening or using, or permitting to be opened and used, as a road for public use or travel, the road designated on the map by the figures 1, 2, 3; and that the same be closed up so as to hinder persons travelling on the turnpike road from using it as an open road; and that the defendants, except *Frederick Graham,* pay the costs of this suit; and that the bill, as to him, be dismissed.