## Case No. 5,948.

### HALL et al. v. SULLIVAN R. CO.

[1 Brunner, Col. Cas. 613;[1] 21 Law Rep. 138.]

Circuit Court. D. New Hampshire. May Term, 1857.

CORPORATE FRANCHISES — TRANSFERABILITY OF— MORTGAGE — POWER OF SALE DOES NOT SUPERSEDE RIGHT TO FORECLOSE—PARTIES—RULES AS TO, HOW GOVERNED.

1. A corporation cannot, in general, transfer its franchise; but where a mortgage of a franchise by a corporation has been recognized as valid by the legislature, it is good between the parties.

[Cited in Chicago, R. I. & P. R. Co. v. Howard, 7 Wall. (74 U. S.) 415. Followed in Union Pac. R. Co. v. Lincoln Co., Case No. 14,378; Sweatt v. Boston, H. & E. R. Co., Id. 13,684; Adams v. Boston, H. & E. R. Co., Id. 47; Memphis & L. R. R. Co. v. Railroad Com'rs, 112 U. S. 619, 5 Sup. Ct. 299; New Orleans, Ft. S. & L. R. Co. v. Delamore, 114 U. S. 508, 5 Sup. Ct. 1012.]

2. The insertion of a power of sale in a mortgage to trustees for the benefit of bondholders does not supersede the right of foreclosure by bill in equity.

3. The court will not allow a rule respecting parties, adopted for convenience, to operate so as to defeat the ends of justice.

[Cited in Richards v. Merrimack & C. R. R., 44 N. H. 136; Richardson v. Sibley, 11 Allen, 67.]

[In equity. This was a bill by Andrew T. Hall and others against the Sullivan Railroad Company, asking for the transfer to the plaintiffs, as trustees, of certain franchises of the defendant. The defendant company gave a mortgage to the plaintiffs as trustees, according to the terms of which certain portions of the railroad were to be transferred to plaintiffs upon default by the defendant. After default the defendant company resisted the transfer. Heard on demurrer to the bill.]

H. M. Parker and Joel Parker, for complainants.

S. E. Sewall and J. J. Gilchrist, for respondent.

CURTIS, Circuit Justice. This is a bill in equity brought by certain citizens of the state of Massachusetts against the Sullivan Railroad Company, a corporation created by a law of the state of New Hampshire, and against George Olcott, a citizen of the last-mentioned state. It is founded on a mortgage, a copy of which is annexed to the bill, which purports to have been executed under the corporate seal pursuant to certain votes of the corporation which are therein recited; and this mortgage conveys unto the complain-

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

ants as trustees "the railroad and franchise of the said company in the towns of Walpole, Charlestown, Claremont, and Cornish, in the county of Sullivan and state of New Hampshire, as the same is now legally established, constructed, or improved, or as the same may be at any time hereafter legally established, constructed, and improved, from its junction with the Cheshire Railroad Company to its junction with the Vermont Central Railroad Company, with all the lands, buildings, and fixtures of every kind thereto belonging, together with all the locomotive engines, passenger, freight, dirt, and hand cars, and all the other personal property of the said company, as the same now is in use by the said company, or as the same may be hereafter changed or surrendered by the said company." Habendum to the said trustees, and "provided, nevertheless, and the foregoing deed is made upon the following trusts and conditions." Then follow the trusts and conditions, which will be more fully adverted to hereafter; but it should be here stated that the general purpose of the mortgage was to secure the payment of the interest and principal of certain bonds issued by the corporation, the interest whereon had become due before this bill was filed, and is unpaid. The bill prays, first, that the trustees may be put into possession of the railroad franchise and property conveyed by the deed, and may be directed by the court in its management and in the execution of their trust, and that the company may be restrained from intermeddling therewith; second, that an account may be taken of what is due to bondholders, and the company ordered to pay the same by a fixed day, and in default thereof that the company may be forever debarred and foreclosed from all equity of redemption of the mortgaged property; third, that a receiver may be appointed, for certain purposes which it is not necessary here to specify; fourth, that a sale may be made of the franchise and property mortgaged; fifth, for relief generally; under which last prayer complainant's counsel, at the hearing, ask for a foreclosure by sale, instead of a strict foreclosure, as specially prayed for, provided the court should be of opinion that a foreclosure by sale would be more equitable.

The railroad corporation has demurred to the bill, and I will now state my opinion upon the several questions which have been argued, so far as they are necessarily raised by the demurrer. The first is whether the mortgage is valid and competent to convey what it purports to convey. The objection made by the respondents is, that the grant by the state of the franchise to be a corporation and to build, own, and work a railroad, and take tolls thereon, is attended with an obligation on the part of the company to exercise these franchises for the public benefit; that consequently the corporation cannot divest itself of its railroad and all the other necessary means of discharging its public duty; and as these franchises were confided

to the particular political person, they can be exercised by that person alone, and any attempt to delegate them to others is inoperative and void, upon grounds of public policy. Many authorities have been cited in support of this position, the principal of which are Winch v. Birkenhead, L. & C. J. Ry. Co., 13 Eng. Law & Eq. 506; South Yorkshire Ry. Co. v. Great Northern Ry. Co., 19 Eng. Law & Eq. 518; Beman v. Rufford, 6 Eng. Law. & Eq. 106; Shrewsbury & B. Ry. Co. v. London & N. W. & S. U. Ry. Co., 21 Eng. Law & Eq. 319; Troy & R. R. Co. v. Kerr, 17 Barb. 581; State v. Rives, 5 Ired. 297.

These authorities are sufficient to show that in England the law is as the defendants assert it to be in New Hampshire. To a certain extent it needs no authority to show that the position must be well founded in New Hampshire. Among the franchises of the company is that of being a body politic with rights of succession of members, and of acquiring, holding, and conveying property, and suing and being sued by a certain name. Such an artificial being, only the law can create; and when created, it cannot transfer its own existence into another body, nor can it enable natural persons to act in its name, save as its agents, or as members of the corporation, acting in conformity with the modes required or allowed by its charter. The franchise to be a corporation is, therefore, not a subject of sale and transfer, unless the law, by some positive provision, has made it so, and pointed out the modes in which such sale and transfer may be effected. But the franchises to build, own, and manage a railroad, and to take tolls thereon, are not necessarily corporate rights; they are capable of existing in and being enjoyed by natural persons; and there is nothing in their nature inconsistent with their being assignable. Com. Dig. "Grant," C; Peter v. Kendal, 6 Barn. & C. 703.

Whether, when they have been granted to a corporation created for the purpose of holding and using them, they may legally be mortgaged by such corporation in order to obtain means to carry out the purpose of its existence, must depend upon the terms in which they are granted, or, in the absence of anything special in the grant itself, upon the intention of the legislature, to be deduced from the general purpose it had in view, the means it intended to have employed to execute those purposes, and the course of legislation on the same or similar subjects; or, as it is sometimes compendiously expressed, upon the public policy of the state. There is nothing in the particular terms of the grant of these franchises to the Sullivan Railroad Corporation which expressly restrains their exercise to that corporation alone. The question whether they can be exercised by any other person than the corporation, depending upon the public policy of the state of New Hampshire, to be deduced from an examina-

tion not merely of this charter, but of the general course of the legislation of the state on this and similar subjects, it is eminently proper that this court should, if possible, follow and not precede the supreme court of New Hampshire in its conclusions respecting this question. In the absence of any decision by that court I should enter upon an examination of it with great reluctance. In the manuscript opinion of the supreme court of New Hampshire in the case of Pierce v. Emery [32 N. H. 484], which has been produced at the bar, Mr. Chief Justice Perley has stated some views on this question. If it were necessary for me, in this case, to come to any conclusion concerning it, I should probably assent to the views therein expressed, though I do not understand the question whether a corporation can mortgage its railroad and its franchises to own and manage and take toll on it, came directly into decision in that case. But I do not find myself under the necessity of deciding this question, because I am of opinion that the legislature of the state of New Hampshire has so far recognized the validity of this mortgage, that it is not now to be deemed invalid, as being contrary to the public policy of the state.

On the 14th day of July, 1855, the legislature of New Hampshire passed an act, the title and first two sections of which are as follows:—

"An Act Relating to the Sullivan Railroad Company.

"Sec. 1. Be it enacted, etc. That for the purpose of enabling the Sullivan Railroad Company to pay and satisfy its debts, and thereby to have greater power and means to provide for the public travel and transportation over its road, the said corporation is authorized to create and issue a new stock to the amount of six hundred thousand dollars, to be issued and disposed of in the manner herein provided; which stock shall have all the rights and privileges and incidents attached to any stock in said corporation, and shall, moreover, as a preferred stock, have attached to it the rights and privileges specially conferred by this act.

"Sec. 2. Upon the adoption of the act, by two thirds of the stockholders, at a meeting duly called for that purpose, the corporation shall proceed to create such stock to the amount aforesaid, in shares of one hundred dollars each, and shall offer the same to the mortgage creditors of the company, who shall have the right to take the same in manner following, to wit: The several creditors holding bonds under the mortgage made by said company on the 13th day of February, 1850, may subscribe for and take of said stock an amount equal to eighty per cent. of the principal sum of the bonds held by them respectively, and pay therefor in their bonds, which shall be received in payment thereof, the holders surrendering all outstanding coupons thereon. Those holding bonds issued under the mortgage made by the said company on

the 1st of August, 1851, may subscribe and take of said stock an amount equal to fifty per cent. of the principal sum of the bonds held by them respectively, and pay therefor in said bonds, at that rate, surrendering the coupons as aforesaid. So much of said stock as shall remain after satisfying the bonds issued under the security of said mortgages, in the manner provided by this act, may be issued to any parties who shall in consideration thereof pay off, satisfy, and extinguish all debts due from said company, which are not within the security of either of said mortgages, and which shall exist against the company at the time when the stock hereby authorized shall be created."

And on the same day the following act was passed:—

"An Act in Relation to the Sullivan Railroad.

"Be it enacted, etc.

"Sec. 1. That if it shall become necessary at any time for the trustees of the mortgage bonds issued by the Sullivan Railroad Company to take possession of said railroad, and to operate the same for the benefit of the bondholders, and said trustees shall actually take possession thereof, and operate the same, such trustees shall not, by reason of their operating said railroad, as aforesaid, incur any personal liability except such as they shall assume by contract.

"Sec. 2. This act shall take effect from its passage."

By the first of these acts, the legislature recognize the existence of the mortgage now in question, and confer on the corporation new powers to enable it to pay the debts secured by the mortgage, and it is expressly declared that this was done to enable the corporation to have greater power and means to provide for the public travel and transportation over its railroad. By the second of these acts, not only the existence of the mortgage and the power of the trustees to take possession of the railroad and operate it for the benefit of the bondholders, are recognized, but the responsibility to be incurred by the trustees in the exercise of these powers to take possession of and operate the road, is regulated and limited. After the legislature had thus granted to the corporation new powers, to enable it the better to accomplish its duties to the public by paying off this mortgage, and had interposed to facilitate the exercise of the powers of the trustees under the mortgage, by regulating and restricting the personal liabilities to be incurred by them in the exercise of these powers, it seems to be impossible to maintain that the mortgage itself is void, because contrary to the public policy of the state. The will of the legislature, while acting within the powers conferred by the people of the state, constitutes the public policy of the state; and so far from manifesting its will to have this mortgage void and inoperative, it has interfered to help out its operation, and make it more easily available as a security. I do not think a court of justice can undertake to declare that a mortgage was contrary to the public policy of the state, after the legislature has directly interposed to aid the mortgagees to act under it. I am therefore of opinion that this mortgage, so far as it purports to convey to the trustees the tangible property of the company, and the right to manage and work the road and take toll thereon, is not void as being contrary to the public policy of the state.

The next question I have considered is, whether the trustees are entitled, upon the case made by the bill, to a decree of foreclosure, either by a strict foreclosure or by a sale. It is insisted by the defendants that the only mode of foreclosing this mortgage is by a sale in pursuance of the fourth article; and though it is not denied that this power of sale may be executed under the direction of a court of equity, upon a bill framed for that purpose, yet it is objected that this bill does not show that a case exists for the exercise of that power; because it does not appear that the holders of two thirds of the amount of the bonds have requested the trustees to sell. The right to foreclose is incident to all mortgages, save Welsh mortgages; and there is no ground for maintaining that this is a Welsh mortgage. For the conveyance is a collateral security for the bonds of the company, the interest and principal of which are payable at fixed times, and the failure to pay such principal or interest is a breach of the second express condition in the deed. Balfe v. Lord, 2 Dru. & War. 480.

Without undertaking to say that the parties may not restrict the right of foreclosure, I consider it quite clear that the insertion of a power of sale in a deed of mortgage neither deprives the mortgagee of his right to strict foreclosure where such right would otherwise exist, nor prevents a court of equity from foreclosing by a sale made under its direction, in cases where it finds a strict foreclosure is not matter of absolute right on the part of the mortgagee, and a strict foreclosure would be inequitable. In Slade v. Rigg, 3 Hare, 35, Sir James Wigram. V. C., decreed a strict foreclosure, though the deed contained a power of sale, and it was argued that the execution of that power was the only remedy for the mortgagee. In Wayne v. Hanham, 4 Eng. Law & Eq. 147, the deed contained a power of sale. The mortgagee brought a bill for a strict foreclosure. The mortgagor resisted, and insisted that the mortgagee could only have a decree for a sale. Sir George Turner, V. C., reviewed the case of Slade v. Rigg, approved it, and decreed a strict foreclosure. These were mortgages of personalty, which increased the difficulty of ordering a strict foreclosure; but that, as well as the existence of the power of sale, was held to be insufficient to confine the mortgagee to an exercise of the power of sale contained in the deed. I think the true distinction is taken in Jenkin v. Row, 11 Eng. Law & Eq.

297; it is between deeds containing a mere trust for a sale to secure money advanced, and a mortgage. The former must, of course, be executed as declared, and there the remedy stops. But if the deed be a mortgage, the right to a foreclosure arises from the nature of the security, and is entirely consistent with the existence of another right, viz., a power to sell in pais, which the mortgagor cannot compel the mortgagee to execute. It is inserted for the benefit of the mortgagee, and he may avail himself of it, or not, at his own will. It was argued, in the case at bar, that it could not have been intended that a right to foreclose should exist, because, after foreclosure, the trustees would still hold as trustees, and so the whole matter would stand as before. It is true they would hold the absolute estate as trustees; but it would be as trustees for the bondholders, and subject to such disposition thereof, as their rights and interest might require. In the case of Shaw v. Norfolk Co. R. Co., the supreme court of Massachusetts had a similar mortgage before them, and held that the power of sale did not supersede the right to foreclose by bill in equity. 5 Gray, 162.

My opinion is, therefore, that upon the case stated in this bill the trustees have a right to come into a court of equity to foreclose this mortgage. In what manner it is to be foreclosed, whether by a strict foreclosure, or by a sale, it would be premature now to decide. Whether the statute law of New Hampshire defining the rights and methods of foreclosure so affects the right itself that only a strict foreclosure, substantially such as is there provided for, can be decreed by a court of equity; or whether the grant of equity jurisdiction to the supreme court of that state can be considered as having affected the right of foreclosure, by superadding those principles of equity respecting foreclosure which are administered in courts of equity; or how far this court is to regard either of these considerations, and what particular method of foreclosure the principles of equity require in this case,—can only be properly decided at the hearing, when the merits of the case shall be before the court upon the allegations and proofs of both parties. For the purpose of this demurrer, it is enough that upon the case, as stated in the bill, the complainants appear to be entitled to some decree of foreclosure. And inasmuch as the demurrer, being taken to the whole bill, must be overruled, if the bill for any purpose is sustainable, it is not necessary to decide whether the complainants are entitled to the aid of a court of equity to put them in possession, either in the course of or independent of a process of foreclosure. This question also may best be decided at the hearing. If the complainants merely sought possession of tangible property of the company, not for the purpose of foreclosing the mortgage, but to enable them to take its profits, there might be no sufficient reason for the interposition of a court of equity. On the other hand, if they also need to be quieted and protected in the enjoyment of incorporeal rights, the nature of the rights and their liability to numerous interruptions and infringements might render the powers of a court of equity indispensable to their effectual protection. See Croton Turnpike-Road Co. v. Ryder, 1 Johns. Ch. 611; Newburgh & Cochecton Turnpike-Road Co. v. Miller, 5 Johns. Ch. 101; Boston Water-Power Co. v. Boston & W. R. Co., 16 Pick. 525. When the whole case is before the court, it can be seen what the rights of the parties are, and how far and for what purposes the complainants need the aid of the court.

The remaining question is, whether it was necessary for the trustees to make the bondholders parties. Generally when a mortgage is made to a trustee for the benefit of a cestui que trust, I apprehend that the question whether the cestui que trust ought to be made a party, depends on the purpose of the trust. If the trustee is the proper party to receive and continue to hold the money for the benefit of the cestui que trust, so that the object of the suit is merely to reduce the trust fund to possession, that the trustee may hold it in trust, the cestui que trust is not a necessary party. For I take the general rule to be, that to a suit by a trustee to obtain possession of the trust fund, the cestui que trust need not be made a party. See Calv. Parties, 212–215, and cases there cited; Allen v. Knight, 5 Hare, 272. But where a trustee is interposed between a lender and a borrower merely for the purpose of enabling the lender to obtain payment through the exercise by the trustee of powers conferred on him by the mortgage, and the lender is the proper party to receive the money, he should be made a party to a bill for foreclosure. It is, in truth, between him and the mortgagor that the account is to be taken, and he ought to be before the court for the purpose of taking the account, as well as to receive the money if paid. See Story, Eq. Pl. § 201. But this requirement of the presence of the cestui que trust must give way to the absolute impossibility, or even to the excessive inconvenience of complying with it. And the case at bar undoubtedly presents an instance of such excessive inconvenience, if not of absolute impossibility. The bill shows that the number of different bonds secured by this mortgage was seven hundred and five, amounting to the sum of five hundred thousand dollars. They were not issued until after the execution of the mortgage; of course their original holders are not parties to the deed. It is a notorious fact, and recognized in various ways by the legislation of most states where railroad corporations have issued such bonds, and manifestly contemplated by the deed in question, that these bonds were to be sold in the market and pass from hand to hand. Consequently it must have been impossible for the trustees to know who were the holders when the bill was filed; and if then known, there would be no probability that

they would continue in the same hands during any considerable time. To require the trustees to make the holders parties, would 'amount to a prohibition to sue; and it is now too well settled to require a reference to authorities to show that courts of equity do not allow a rule respecting parties, adopted for purposes of convenience and safety, to operate so as to defeat entirely the purposes of justice. Nor is this a case in which it could answer any beneficial purpose to make some of the bondholders parties, in behalf of themselves and all others. The trustees are competent, and it is their duty, to represent all. Powell v. Wright, 7 Beav. 444. The deed so treats them. In the cases of a sale, or possession taken of the road for purposes of managing it and receiving the income, the deed looks to the trustees to ascertain who are holders of bonds, and to pay to each his aliquot part. And it is in the power of the court, by directing the proper inquiries before a master, to have the holders of the bonds before the court at the moment when the account is to be taken, and thus afford all needful security, as well to them as to the mortgagors and the trustees. See Story, Eq. Pl. § 207a; Williams v. Gibbes, 17 How. [58 U. S.] 239; Gooding v. Oliver, Id. 274. It was stated at the bar that the supreme court of Massachusetts came to this same conclusion in reference to parties, in Shaw v. Norfolk Co. R. Co., above referred to, but that no report of the decision, on that point, has been made. 5 Gray, 170. My opinion is that the objection for the want of parties is not tenable.

The demurrer is overruled, and the defendants ordered to answer the bill.

NOTE. Franchises of corporations are not generally the subject of sale or transfer, unless specially made so by some positive provision in them. See Adams v. Boston, H. & E. R. Co. [Case No. 47]; Sweatt v. Boston, H. & E. R. Co. [Id. 13,684]; Richardson v. Sibley, 11 Allen, 67; Abbott v. Johnstown, G. & K. H. R. Co., 80 N. Y. 29, citing case in text, and approving doctrine as there laid down. Corporations as parties to a suit. See Railroad Co. v. Howard, 7 Wall. [74 U. S.] 415, citing case in text.