THE CAMDEN HORSE-RAILROAD COMPANY

*v.*

THE CITIZENS COACH COMPANY.

1. A horse-railroad company, chartered by the legislature, may, while legally operating its road, enjoin a rival coach company, organized under the general corporation act, and licensed by the city where the tracks are laid, from regularly using its tracks with coaches adapted thereto, in competition with it in its business in transporting passengers and goods for hire, and from obstructing it in the use of such tracks by impeding the passage of its cars, by stopping thereon to take up and let down passengers.

2. Under a special prayer, relief of the same general character but less extensive, may be granted, or the prayer may be amended, if necessary.

Bill for an injunction. On final hearing on pleadings and proofs.

*Mr. D. J. Pancoast* and *Mr. P. L. Voorhees*, for complainant.

*Mr. A. C. Scovel*, for defendant.

THE CHANCELLOR.

The complainant was incorporated by an act of the legislature, approved March 23d, 1866 (*P. L. 1866 p. 640*). By the charter and its two supplements, one of which was passed April 2d, 1868 (*P. L. 1868 p. 628*), and the other March 11th, 1872 (*P. L. 1872 p. 513*), it was empowered to construct and maintain and operate a horse-railroad in certain specified streets in Camden, and demand and take compensation for the carriage of passengers and property thereon. It was provided by the original act that the track should be of the same width as the wagon track established by law, and that the track and rails should, in all cases, be

laid level with the surface of the streets through which the
road should pass, and in conformity with the grades of the
streets.  It was also enacted by that act, that if any person
or persons should willfully or maliciously impair, injure,
destroy or obstruct the use of the railroad, or any of its
works, carriages, animals or machines, such person or
persons should forfeit and pay therefor to the corporation
three times the amount of damages sustained by means of
the injury, to be recovered in the name of the corporation,
with costs of suit, in any court having cognizance thereof.
Under the legislative authority which it possessed under its
charter and the supplements thereto, the complainant laid
its tracks at a cost of about $100,000, and has maintained
them at an average expense of $1,200 a year.  In July,
1876, the road was in full operation.  The defendant
became incorporated then, under the act " concerning cor-
porations," for the purpose of carrying passengers and
goods and merchandise, in coaches, in and about the city
of Camden, for compensation.

The bill was filed on the 10th of October, 1876.  It states
that the defendant, since its organization, has procured a
large number of horses and coaches, and entered on the
business of carrying passengers in and through Camden ;
that the coaches are made so as to fit and run upon the rail-
road of the complainant; that the defendant, in the pursuit
of its business, continually drives the coaches in, through
and along the same streets on which the complainant's road
is built, maintained and used; that the defendant con-
tinually uses the complainant's road and tracks in and on
those streets for the purpose of its business, by driving its
coaches upon and along those roads and rails, to the great
damage thereof, and against the complainant's wish and
express request, greatly injuring and destroying them ; and
that it greatly and unnecessarily annoys, vexes, hinders and
obstructs the complainant in the lawful use and exercise of
its property and franchises, by purposely driving its coaches
upon and along the complainant's road and tracks, in front

of its cars, and stopping thereon to take, receive and deliver and discharge passengers and baggage, thereby greatly impeding the progress of the complainant's cars on its road and tracks, and injuring its business.

The bill further states that the streets on which the tracks are laid, are about sixty-six feet wide, and that the tracks are five feet and a half in width, and are so constructed and laid as not to interfere with the rights of the public in the free and unobstructed use of the streets for traveling and other lawful purposes.

By its answer, the defendant alleges that the city council of Camden has, under the city charter, power to regulate the use of the streets, and to license and regulate hacks, cabs, omnibus, stage or truck owners and drivers, carriages and vehicles for the transportation of passengers and merchandise, goods or articles of any kind in the city; that the defendant was duly licensed by those authorities to carry on its business and run its coaches or omnibuses in and along all the streets of the city, for the purpose of carrying passengers and goods and merchandise in Camden, and that the city council, in September, 1872, by ordinance, duly ordained for the regulation of travel on horse-railroads in the city, that all persons driving vehicles on any horse-railroad in the city running east and west, should have the right to the railroad track when going east, and, meeting any other vehicle going in the opposite direction, should be compelled to turn entirely off the track; and all persons driving vehicles on any horse-railroad in the city running north and south (north of Market street), should have the right of way to the railroad track when going north, and, when meeting any other vehicle going in the opposite direction, should be compelled to turn entirely off the track, and that all persons driving vehicles on any horse-railroad south of Market street, should have the right of way to the railroad track when going south; provided, that the horse-railroad companies should, in all cases, have the right of way.

The answer denies that the defendant's coaches are made to fit and run upon the road and rails of the complainant; and, also, that in the pursuit of its business, the defendant does the acts or inflicts the injury complained of in the bill; and, while admitting that the tracks are the private property of the complainant, it denies that the latter is entitled to the exclusive use thereof as against the defendant or any other persons seeking to use it in the business of transporting passengers from one point in Camden to another. It also denies that the tracks are laid so as not to interfere with the free and unobstructed use of the streets on which they are for traveling and other lawful purposes, and states that they are so laid as to interfere with and obstruct such use, and that they are, in some places, six inches above the established grade. It states the width of the streets through which the complainant's road is laid and the distance from the curbs to the railroad tracks; that the distance between the rails of the tracks is, measuring on the inside, five feet and six inches; that the complainant did not lay its tracks in part of one of the streets until a long time after the defendant had begun running its coaches over that part of that street; and it states that the defendant has occasionally (but it denies that it has done so regularly) driven its coaches on the tram-way of the complainant's road when the road was not occupied by the cars of the latter or the vehicles of others, but alleges that the defendant has, in no other way, used the complainant's rails or roads except in crossing the rails when turning out or in crossing the streets.

· On the filing of the bill, an injunction was, after an order to show cause, granted, restraining the defendants from "constantly, or at regular intervals, using with its coaches, in pursuit of its business of carrying passengers in and about the city of Camden, the railroads of the complainant, but the right to use the tracks incidentally in the use of the streets was expressly recognized and in nowise interfered with." *Citizens Coach Co.* v. *Camden Horse R. R. Co.*,

*1 Stew. 145.* The order for the injunction was reversed by the court of last resort, on the ground that, in the opinion of the appellate tribunal, the case fell within the general rule that if the facts constituting the claim of the complainant for the immediate interposition of the court are controverted under oath by the defendant, the court will not interfere at the initial stage of the cause. The merits of the controversy otherwise appear not to have been passed upon. *Citizens Coach Co.* v. *Camden Horse R. R. Co.,* 2 *Stew.* 299.

The franchise of a street-railway is defined to be a right to construct and maintain a railway on the surface of a street, and to carry passengers, and to demand tolls; and it is said to be so far exclusive as that others may not use the road without a grant from the legislature. *Ang. on Highw.* § 32.

Said Chief-Justice Denio, in *Davis* v. *Mayor &c. of New York,* 14 *N. Y.* 506, 516 : " The feature which most widely distinguishes a railroad from ordinary streets and highways is, that the former is a strict monopoly, entirely excluding all idea of competition. There may be rival roads, but there can be no rivalry on the same road."

In *Sixth Avenue Railway Co.* v. *Kerr,* 45 *Barb.* 138, the exclusive power conferred by a grant to build, maintain and operate a street-railroad, is said to be that of using railway carriages thereon in the same manner as the grant of a stage line confers, for the time being, the grant of a monopoly of using such stages for the transportation of passengers for hire on that route.

In his opinion in *Jersey City & Bergen R. Co.* v. *Jersey City & Hoboken Horse R. Co.,* 5 *C. E. Gr.* 61, Chancellor Zabriskie said : " The iron rails laid by the complainants are their property ; although laid in the street, the property in them is not abandoned or given to the public, the city or the defendants, any more than stone steps, iron railing, posts, vault covers, or flagging placed within the limits of the street by proper authority, are abandoned or given to the public. In most cases they could be removed by the

owner, and, in all cases, he could maintain an action against any one injuring or appropriating them. No doubt the incidental crossing over those rails by any one in using the street, or even in the use of the street, driving occasionally upon or along them, might be justified by an implied permission from their being placed in the street without any regulation to prohibit such use. But no one would be allowed to have a carriage constructed especially to pass over the track, and adapted to no other part of the street, and by it to appropriate the complainant's property to his use." In the report to the legislature of Massachusetts, referred to in that opinion, the like views as to the rights of such railroad companies are expressed. The language is as follows: " It is certain, we think, that the grant of an act of incorporation to a company for the purpose of constructing and operating a railway for the transportation of passengers, although located in and along a highway, is a franchise, and one of an exclusive character, to some extent. The extent of the exclusiveness of a grant of this character, where no exclusive words are contained in the grant, must depend upon the reasonable and fair implications to be gathered from the nature of the business and other surrounding circumstances. And, in a case of this kind, where the incorporation is exclusively for the purpose of transporting passengers and taking tolls, in which it must be regarded as a fair implication from the very nature of the grant, the investment requisite to carry it into operation, and the necessity of avoiding competition in order to produce any adequate return, that the franchise must be considered as being exclusive of all similar transportation upon the same route by mere private enterprise. It would be little short of absurdity to suppose that it could have entered into the contemplation of the legislature, or of the companies, that, after obtaining their location, and after having erected and equipped their roads, at large expense, it was still competent for any person, natural or corporate, at his own mere option, to construct cars and

divide the business by running upon the same track laid by such company.     *     *     *     But they (the legislature) may, nevertheless, allow other persons, either natural or corporate, to do a similar business in the same streets, or to do it on the tracks of an existing company by making compensation to the other company, whenever, in their judgment, the public good requires it. In one case, the grant, being wholly independent, is understood to be made because the amount of travel is supposed to require two such modes of conveyance, and, in the other, the compensation is regarded as an equivalent for the use." *1 Redfield on Railw. 330.* See, also, *Brooklyn Cen. R. R. Co.* v. *Brooklyn City R. R. Co., 32 Barb. 358; Commonwealth* v. *Temple, 14 Gray 74; Metropolitan R. Co.* v. *Quincy R. Co., 12 Allen 262.*

That the complainant is entitled in equity to protection in the exercise of its franchises not only against unlawful competition, but against unlawful obstruction, cannot be doubted. *Rar. & Del. B. R. Co.* v. *Del. & Rar. Can. Co., 3 C. E. Gr. 546; Jersey City & Bergen R. Co.* v. *Jersey City & Hoboken Horse R. Co., 5 C. E. Gr. 61; Central R. R. Co.* v. *Pennsylvania R. R. Co., 4 Stew. 475.*

In this case (*2 Stew. 305*), it was said by the court of errors and appeals that the complainant is to be secured in the enjoyment of the privileges conferred by its charter. Injunction is the proper remedy to secure to a party the enjoyment of a statute privilege of which he is in actual possession, and his legal title whereto is not put in doubt. *Croton Turnp. Co.* v. *Ryder, 1 Johns. Ch. 611; Rar. & Del. B. R. Co.* v. *Del. & Rar. Can. Co., 3 C. E. Gr. 546; High on Inj. § 575.*

The rights of the parties are substantially as they were declared to be in the former opinion in this case in this court. While the defendant has a right to the use of the complainant's road in, and as incidental to, the use of the street of which that road forms a part, it has not the right

to use the tracks in competition with the complainant in its business thereon, and it has not the right to obstruct the latter in its use of its road. By the legislative grant the complainant obtained a franchise to build and maintain and operate a railroad in the streets designated, and to transport passengers and goods thereon, and take compensation therefor. It acquired no estate or interest in the land of the street, indeed, but only the mere right to the use of the highway or public easement. *Hinchman* v. *Paterson Horse R. Co. 2 C. E. Gr. 75, 80.* But while its use of the street is in common with others, it has some rights superior to theirs. *Middlesex R. R. Co.* v. *Wakefield, 103 Mass. 261; Hegan* v. *Eighth Av. R. R. Co., 15 N. Y. 380.* Said the court in the latter case: " When a railroad is laid lengthwise upon a street, it is not unlawful for common vehicles to travel upon the track, across it or lengthwise. The company has the exclusive right to the track while its cars are passing, but its right is not otherwise exclusive. Other carriages must keep out of the way of the cars."

Said the court in *Louisville & Portland R. Co.* v. *Louisville City R. Co., 2 Duv. 175:* " The railroad company's right to its own road, without intrusion on it or obstruction in the use of it, is necessarily exclusive." See, also, *Whitaker* v. *Eighth Av. R. R. Co., 51 N. Y. 295.*

In *Adolph* v. *Central Park &c. R. Co., 43 N. Y. Sup. Ct. 199,* it was held that the ordinary vehicle and the street car have equal rights on the track, and that neither has superiority over the other, but it is obvious that such a rule disregards the franchise of the railroad company, and is not maintainable.

In *Troy & Lansingburgh R. R. Co.* v. *Collins, N. Y. Sup. Ct., Dec. 1878,* the suit was by a horse-railroad company to restrain the owner of a wagon, adapted to the railroad track and used to carry passengers thereon, from using the track therewith as a common carrier of passengers for hire. On the filing of the complaint, a preliminary injunction was granted. The copy of the record handed to me does

not show the subsequent proceedings in the cause. The complainant would be entitled to protection against the unauthorized use of its track by another railroad company, and against the like use of it by any one with a railroad car. It is also entitled to protection against such use by a company or an individual in competition with it, in its business of transporting persons and goods on its track, although the vehicle used be not a railroad car, but a wagon, running not on the track, but on the tram-way thereof. If the track be used as a railroad for such purpose, the injury to the complainant is equally a subject of judicial concern, whether the one part of the rails or the other is used. Unless the complainant can obtain protection against such use of its road, and can obtain relief against obstruction in the use thereof, its franchise is worthless, and its road valueless.

The bill complains that the defendant continually uses the the track, and that it greatly and unnecessarily annoys, vexes, hinders and obstructs the complainant in the lawful use and exercise of its property and franchises by purposely driving its coaches on the railroad in front of the complainant's cars and stopping them to take in, receive and deliver passengers and baggage, and thereby greatly impedes the progress of the complainant's cars, and injures its business. The defendant, as has already been said, has the right to use the track in the use of the street. The object of the legislature in requiring that the track shall be of the width of the established wagon track, is manifestly that the railroad may be used by ordinary vehicles if it be desired, as opportunity may be afforded. But the complainant has a right to the track superior to the right of the defendant, and, in the use of the track, the latter must give way to the former. The complainant has an exclusive right to the business of transporting persons and property on the track, and the defendant has, therefore, no right to carry on that business in competition with it on the railroad.

The defendant, as before stated, has no right to hinder or obstruct the complainant in the use of the track. It is not lawful for it to stop its coaches before the cars on the track, to take up or let off passengers, or take up or deliver goods, and so or otherwise hinder and obstruct the complainant's cars.

The weight of the testimony in the cause sustains the allegations of the bill. Colonel McKeen, one of the directors of the complainant, and its treasurer, in his testimony, states the causes of complaint to which this suit is due, as follows: " The causes generally, without going into particulars, were using the tracks of the company, and obstructing us in the pursuit of our business by getting in front of our cars on the track, letting in and discharging passengers, and stopping our cars while doing so, wearing out the rails of the company by continuous use of the track in running on the rails. They ran upon our track to have advantage of our superior mode of travel over the stones in the streets, in competition with us in carrying passengers in the city of Camden." He further says : " The coaches of the defendant would interfere with us at the ferries by whipping in and getting ahead of us at Delaware avenue and Federal street. This was about six hundred feet from the ferry. They would then hold the track until they reached Fifth street. By holding the track, I mean getting ahead of us and taking in and letting out passengers, and stopping on the track, and thus preventing us from making time. This was before the filing of the bill. Our cars were often obliged to stop and wait for them. This was almost a daily occurrence ; it was not continuous ; it occurred when they had occasion to take in and let out passengers. This stoppage occasioned hurt and inconvenience to our business. They used our track to draw their coaches over whenever they could get on them, and, when they were ahead of us, they stayed on and compelled us to stop."

Mr. Hood, the complainant's superintendent, and who is a director and the secretary of the complainant, states the

Camden Horse R. R. Co. v. Citizens Coach Co.

causes of the suit thus: "Speaking generally, those causes were the detention of our cars, collisions with our cars and the wearing out of our tracks by their coaches, in using the tracks to facilitate their business. At the time of the filing of the bill they were running regularly seven coaches on portions of our tracks, and extra coaches from time to time for some time in the morning and also in the evening. Their use of our tracks by their coaches was almost continuous, but there were times when they were not on our rails. The use they made of our tracks was of choice. The existence of our tracks in the street did not at all interfere with the travel of vehicles or wagons of that or any other character; on the other hand, I believe that streets where our rails are laid teamsters and others drive to, for the purpose of traveling on the rails. I have had teamsters and others tell me they did it, and I have witnessed it every day myself. * * * The effects of their use upon our tracks has been noticeable to me, and, before the filing of the bill, more noticeable than our own use of it. The use of our track by them was, and certainly is, a material disadvantage to us in our business, and is a material advantage to them. Both companies do the same kind of a business on the same streets, that is the transportation of passengers. * * * I .know that it was a great advantage to them in their business to use our tracks; there is no doubt about it. It was advantageous to them in the saving of horse-flesh by the vehicles pulling that much more easily, in the wear and tear of coaches, and an easier and smoother surface for their passengers to ride upon, in this way inducing them to ride. It is clearly a greater inducement for people to ride in coaches when they run over rails than when they run over cobble-stones."

The proof is, that the defendant adapted some of its coaches to the track; that it habitually used the track, its coaches setting out ahead of the cars, and getting in advance of them on the track, obstructing and hindering them in their progress by stopping to let off and take up passengers,

35

and forestalling them in the business on the road, thus competing with the complainant in its own business, on its own track, and subordinating the complainant's use of the track to the defendant's use thereof. For these injuries the complainant has manifestly no adequate remedy at law. It is entitled to relief in this court.

It is suggested by the defendant's counsel, that the prayer of the bill is merely the special one, that the defendant may be restrained from using, with its coaches, in the pursuit of its business of carrying passengers in and about the city of Camden, the railroad of the complainant, and it is urged that that prayer cannot be granted, and that, therefore, inasmuch as there is no general prayer, no relief can be granted. But the prayer might be amended, if necessary. It is not necessary, for the court may, under the special prayer, give appropriate relief which is of the same character as, but less extensive than, that which is prayed for.

The defendant will not be restrained from using the tracks, but it will be enjoined from using them in competition with the complainant in the business of carrying passengers and property thereon, and from obstructing or hindering the complainant in its use of the tracks.