Speir, J.
The action is brought on the equity side of the court to restrain the committing a nuisance, and for the redress of wrongs and injuries which will involve the plaintiff in vexatious litigation. The issue presents a naked question of law arising on a demurrer to the complaint, where the facts, if properly pleaded, are admitted.
The contentions on the part of the plaintiff and appellant are : First. “ That the owner and occupant of a lot of land and dwelling-house abutting on the street, has a right to the use and enjoyment of such lot and dwelling-house free from the disturbance and invasion of such right, which is admitted by the demurrer ; and that such disturbance and invasion constitute a talcing of property in the sense of the constitutional inhibition. Second. Independent of such constitutional guaranty, the injury inflicted by the defendant upon plaintiff’s lot and dwelling-house, as set out in the complaint, and admitted by the demurrer, constitutes a wrong entitling him to relief by injunction.”
It is claimed by the defendant that the propositions above stated are not now, but, on the contrary, have been carefully considered and determined by this court, the court of common pleas, and, as they believe, practically determined by the court of appeals.
It was admitted, and the following concessions were made in advance by the plaintiff’s counsel:
1. That the fee of the streets for the purpose named in the act of 1813 .is in the city of New York.
2. That the appellant has no easement or other interest in the soil of the street which the respondent invades.
*160 3. That there is a constitutional law authorizing the defendant- to build an elevated railroad upon the street in front of appellant’s dwelling.
4. That under the law there are no restrictions as to the manner of building or operating the railroad— and that the damages which may be recovered must be for injuries directly or immediately caused by the construction or operation of the road, in the manner in which it is or may be hereafter constructed or operated, and not remote and consequential.
We have examined the decisions in the court of appeals and others, to which we have been referred, but in none of them, as we believe, have the points presented by the appellants been adjudicated.
In the case of Gilbert Elevated R. R. Co. v. Anderson (70 N: Y. 375), Chief Justice Church, in delivering the opinion, says: “The amount or extent of the damages are questions not properly before the court. . . . . To determine what particular occupation of
the streets is" to be deemed a legitimate public use involves important and delicate questions. They were very much debated in this court in the surface railroad cases, and the principles adjudicated in those cases will be regarded as obligatory upon the court in deciding future cases.” This decision as to this point was concurred in by the other learned judges of the court. This expression of the opinion of the court of appeals amounts to a positive assertion that the points presented for discussion are new and undetermined. Nor can it be maintained that this court, in the case of Sixth Avenue R. R. Co. (43 Super. Ct. 292), or the court of common pleas (Patten v. New York Elevated Bailroad Co., 3 Abb. New cas. 345), relied on by the defendant, are authority in support of its position, since in both cases the points raised by the defendant here as having been adjudicated in those cases, were neither presented nor decided.
*161 Among the principles applied to the surface railroad cases, we' refer to an expression of two of the judges in the case reported in 70 N. Y., in Matter of N. Y. Elevated Railroad Co., p. 327. The claim made in the case rested on the assumption that the abutting owners of property upon the streets have property rights therein of which they were to be deprived and for which they are entitled under the constitution to compensation. The answer to this by Mr. Justice Earl was, “ Whether they have such property rights, it will not be necessary to determine on this appeal, for the reason that provision is made for compensation.” Mr. Justice Allen concurring, says: “ I am of the opinion'that the several acts, as a whole, did make ample provision for such compensation, and that every property right of individuals, including whatever right or interest, by way of easement, appurtenant to these lands or otherwise, owners of lots abutting on the streets have, in such streets, as well as those the fee of which is in the city, under the laws of 1813, as the other streets, must, under the Constitution and the statutes, under which these proceedings are had, be compensated for.” The learned judge was further of the opinion, that unless such provision for compensation was "made by the statutes to individuals for every property right and interest, whether corporeal or incorporeal, which would be invaded in the construction and operation of the railway, they co'uld not be sustained.
The principles applicable to the steam surface railroads are clearly stated by the court in Drake v. Hudson River Railroad Co., in 7 Barb. 508. This is an early and may be considered a leading casein determining the rights of owners of property bounded on the streets in this city, and the rights of the steam railroad company, in common with others, to use the same, under rules and regulations prescribed by the proper authority. Judge Jones," late chief justice of this *162 court, whose learning and great familiarity with the subject no one will question, furnishes the leading opinion. He first comes to the conclusion, which has generally been received and adopted by the profession,that the streets of this city were dedicated to public uses, and vested in the corporation upon trust, so that the same should be kept open as public streets for the use of the citizens of New York forever, in such manner in which streets then were or should at any time thereafter be beneficially used by lawful authority for the purpose of public city streets. That the common council of the city were vested with the regulation of the streets, and were to prescribe and direct the manner and mode of using them.
After alluding to the then recent introduction of railroads, their great and acknowledged advantages over all other modes of travel, which had brought them"into exclusive use, the learned judge proceeds : “ Desirable improvements of public utility, and beneficial inventions of general interest, are not to be rejected, suppressed, or arrested, simply because they may in their operation and practical effect occasion to property in their vicinity or within the sphere of their action some contingent, or consequential damage. For when they occur the party aggrieved has a remedy by action at law, and by repetition of such action during the continuance of the grievance, whenever and as often as loss or damage ensue ; and with the ulterior remedy which in the case of the presence of tracks in the streets or the running of the cars upon them or other operations of the railroad should be or become a nuisance, or the aggression shall prove to be permanent and without an adequate remedy by action, this court will be competent to administer its equitable relief by injunction to prevent its continuance or for its removal.”
It is proper to say that in this case the injunction was dissolved, as it did not appear from the complaint *163 and affidavits that the mischief was irremediable, which damages could not compensate, and did not reach to the very substance and value of the estate and tend to the destruction of it in the character in which it was enjoyed.
It is urged that no private property or interest is taken within the meaning of the constitution, where a new use is imposed upon the lands in such streets (by which is meant the operation of a railroad by steam, elevated above the- surface of the street). This, we think, has no special pertinency in the case now before us, since it is conceded that, by the terms of the law, there are no restrictions upon the manner of building, nor as to the manner of operating the road ; that it may be operated with any means, in any manner ; that the defendant has the right to use the road, although it be a new mode of using the public streets, for the reason that it is one mode of using it; and finally, that the law is constitutional, as it provides under limitations against the injury of private property without compensation, and that if no such provision was made it would be simply void. When the cases of the surface steam railroads were first debated in the courts, the use imposed upon the lands was as new and prior thereto as little known or anticipated as the present elevated road. The conclusion reached in all the surface railroad cases was, that merely operating the roads by steam on the surface could not be deemed a nuisance, not because it was a new use of the road, but that the law authorized the use as a mode of travel which did not encroach upon private rights.
It is claimed, when the injury to individual rights of property is very great and plainly perceptible, that it becomes the duty of the law-making power to distribute the burden among the general public, rather than leave it to be borne solely by those upon whom it falls. And' it was gravely urged that this must always be a *164 question of “ Statesmanship,” to be specially considered whenever the occasion arises, as the provisions of law cannot safely deal with it. The Constitution being paramount to the statutes and the laws enacted by the legislature, and intended to protect the citizen in the enjoyment of his property in every possible relation of life, it would seem that the courts alone can dispose of the question, when and how payment for private property taken for public use shall be made. It may be admitted that the burdens imposed upon individuals by legislative enactments may become too oppressive to be patiently borne, but the remedy must only be found with" the law-making power of the government. To this question there can be no solution but by an appeal to the fixed and permanent principles of law and equity. It has been well said by the present learned chief justice of our highest court:' “We should all regard a departure by the courts from rules of law wisely established, for the protection of all; to meet the equities of a particular case or class of cases, as a far greater evil than that sought to be remedied.”
The term “property ” is of the largest import, and embraces every mode in which it may be applied to public use, and extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments. The courts will interfere by injunction to secure to a party the bare privilege, conferred by statute (Croton Turnpike Co. v. Ryder, 1 Johns. Ch. 611 ; Newburgh Turnpike Co. v. Miller, 5 Id. 101 ; Boston & Lowell R. R. Co. v. Galena & Lowell R. R. Co., 2 Gray, 1). In the last case, Shaw, Ch., J., says, “ It is a right or title which, if it exists at all, is purely a statute right; it is created by law, it exists only in contemplation of law, it is invisible, intangible, in cap able of physical possession, and depends on the law for its protection.” “Any injury to the property of an *165 individual, which deprives the owner of the ordinary-use of it, is equivalent to a taking, and entitles him to compensation ” (Cooley on Constitutional Limitations, 542). Even claims for compensation for the possession, use or appropriation of tangible property, constitute personal estate equally with property out of which they grow, although the validity of such claims may be denied, and their value may depend upon the uncertainties of litigation, or the doubtful result of an appeal to the legislature (Erwin v. United States, 7 Otto, 396).
It is elementary law that the corrupting the air of a man’s dwelling with noisome smells is a nuisance, for light and air are two indispensable requisites to every dwelling. Lord Mansfield has said that it is not necessary that the smell should be even unwholesome, it is enough if it renders the enjoyment of life and property uncomfortable (3 Black. Comm. 219 ; 1 Burr. 337; Duke of Northumberland v. Claus, C. P. at Westminister, 1824, Chitty). In a word, we think it may be said that there is an inherent absolute right of property in every man, which consists in the free use, enjoyment and disposal of all his acquisitions without control or diminution, save only by the laws- of the land; and “so great is the regard of the law for private property that it will not authorize the least violation of it.” Although there are many individual possessions in life denominated in common use and by law private, yet when we come to speak of a man’s dwelling-house, the abode of his social and domestic life, the word private seems to have been used by the early writers in another and more significant' sense. In Lemayne’s Case (3 Coke, 185-91, b) it is said: “ The house as to every one is to .him as his castle and fortress, as well for his defense as for Ms repose.”
The subject of controversy is a mere naked incorporeal right claimed by the plaintiff to have and enjoy *166 his land and dwelling-house free from the invasion arising from the constructing and operating an elevated steam railroad, producing noises, stench, obstruction of light and air, causing grievous disturbance to himself and family, thereby rendering his residence undesirable, and greatly reducing the market value thereof. If this right exists and has been invaded, the proper and specific remedy which shall prevent the continuing invasion is by injunction, and is within the ordinary, scope of equity jurisdiction. If the plaintiff is disturbed in the enjoyment of his incorporeal right, such disturbance is technically a private nuisance. The complaint, after alleging that if the road be permitted to be built and operated along the street and in front of plaintiff’s house and land he will be subject to a continuing nuisance and to wrongs and injuries which will involve him in interminable litigation, and for which damages will afford him no appropriate or adequate relief, continues, ‘ ‘ and he is informed and believes the defendant is insolvent and unable to.pay any judgment for damages that might be recovered against it, and has mortgaged its entire property for a sum far beyond its value, and that any execution against it would be idle and fruitless.” Where insolvency' or want of ability to answer for injury to be done, in the party complained of, be averred and proven, the court will grant an injunction. The truth of the above allegations is admitted by the demurrer.
It is claimed that the legislature have legalized this road, and therefore it is not a nuisance. It is admitted it is not a public nuisance, as it would be if the legislature had not legalized it. The statutes effectually protect the company, if it complies with the conditions, from an indictment, and against any interference with its work, as a public nuisance on account of the fee in the streets ; but not against claims for private damages arising from injuries to adjacent owners. The *167 company may occupy the streets, but it must occupy them at its peril, in a way not directly or immediately to injure private rights. .In all the surface railroad cases we have examined, while they have held that these roads do not operate as a nuisance, they have clearly, and, we think, • unanimously decided that the facts, after investigation, did not authorize a .judicial deduction that a nuisance had been proven. In the case of Lexington & Ohio R. R. Co. Applegate (8 Dana, 289), cited by the defendant, the chief justice says, “neither the government of the city nor of the State can license a private nuisance, or take or encroach on private property without the owner’s consent or payment of his damages.”
No one will question the utility of the elevated railroad as a public improvement of great convenience and accommodation to the city and the public at large, but these accommodations cannot authorize or justify its invasions on the rights of any portion of our citizens. The individual whose property is affected because the road is of great public value, should be indemnified and fully compensated by the public, or by the company, which profits by the improvement, for any loss or damage he has or may sustain. We have seen, and it is admitted that the law has made provision for such indemnity; that the surface railroads have been compelled to pay the damages done to private property in every case where it is proved to have been invaded. The defendant admits the injury and wrongs done to the plaintiff as alleged in his complaint, and its want of ability to make reparation.
We are of the opinion that the appellant is entitled to relief, and that the judgment should be reversed, with costs.
The action is brought to enjoin the defendant from running its trains in front *168 of the plaintiff’s dwelling in Fifty-third street. The occupation of the street, from curb to curb, opposite the plaintiff’s premises, by an elevated steam railway, and the deprivation of light and air, and the noise, stench, and the exposure of the privacy of plaintiff’s dwelling, and the diminution of the value of the same, in consequence of such occupancy, and the running of trains, are conceded by the demurrer. Upon the argument of the appeal of the plaintiff, from the judgment for the defendant on the demurrer, the plaintiff conceded :